## UNITED STATES v. FOX.

### No. 189.

Circuit Court of Appeals, Second Circuit.

Feb. 24, 1942.

Samuel W. Altman, of New York City, for appellant.

John C. Hilly, of New York City, for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

PER CURIAM.

The accused, Fox, was convicted of possessing with guilty knowledge a carton of silk stolen while it was "part of * * * an interstate * * * shipment." § 409, Title 18 U.S.C.A. He raises only one point; i. e. that the silk when stolen had not yet begun to move in interstate commerce within the meaning of the statute. The facts proved were as follows: The silk was in one of a number of cartons which a New York merchant had packed for shipment to another merchant in California. The shipper's servant made out a through bill of lading for them and a "shipping order" and delivered both along with the cartons—seventeen in all—to the servant of a truckman, doing business in the city who picked them up in a hand-car and took them to the truckman's place of business. Two other servants of the truckman then put them on a motor truck and—with the two documents mentioned also in their possession—drove to the freight yard of the Erie Railroad in New York. One of the men on the truck took the bill of lading to the receiving clerk of the railroad who signed it and gave it back to him. Upon his return to the truck he agreed with his fellow to withhold the carton in question, and later the two delivered it to the accused under circumstances proving his guilty knowledge. As we have said, the only question is whether the carton had become "part of * * * an interstate * * .* shipment."

Courts have at times found it difficult to decide what interruption of a movement, intended from the outset to cross a state border, was definitive enough to divide it into two parts, so that the first—if wholly within a state—was not within the Federal power. In Coe v. Town of Errol, 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715, the logs had actually performed the first leg of a journey which their owner, before he began to move them at all, intended to pass beyond the state. The pause was longer than in Hughes Brothers Co. v. Minnesota, 272 U.S. 469, 475, 47 S.Ct. 170, 71 L.Ed. 359; but if the original intent is to be the test—as it is generally said to be—it is hard to see any difference between the two cases. Be that as it may, the test of whether a state may tax the goods is not a safe one for deciding whether Congress has power to regulate them. Stafford v. Wallace, 258 U.S. 495, 525, 526, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Lemke v. Farmers' Grain Co., 258 U.S. 50, at page 55, 42 S.Ct. 244, 66 L.Ed. 458; Minnesota v. Blasius, 290 U.S. 1, 8, 54 S.Ct. 34, 78 L.Ed. 131. The cattle which it was lawful for Minnesota to tax in Minnesota v. Blasius, supra, would have been subject to the Anti-Trust Acts. Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. Again, as to the powers of the Interstate Commerce Commission over interstate rates, there can be no doubt that jurisdiction attaches as soon as the goods start on the journey, although the first carrier is not to carry them across a state line. Railroad Commission of Ohio v. Worthington, 225 U.S. 101, 32 S.Ct. 653, 56 L.Ed. 1004; Railroad Comm. of Louisiana v. Texas & Pacific Ry., 229 U.S. 336, 33 S.Ct. 837, 57 L.Ed. 1215. See also Philadelphia & Reading Railway Company v. Hancock, 253 U.S. 284, 40 S.Ct. 512, 64 L.Ed. 907. The nearest case we have found

under the statute at bar is Sharp v. United States, 5 Cir., 280 F. 86, and we do not see that it should make any difference that the goods were already in the same car which was to ·carry them out of the state. Wolk v. United States, 8 Cir., 94 F.2d 310, would be flatly in point, were it not that the court held that the truckman was only an agent of the interstate carrier. Indeed, if he had not been, apparently the result would have been otherwise. To that we cannot agree. Although we have therefore not been able to find any authority precisely on all fours, we are satisfied that at least as soon as the goods have finally left the shipper's possession and have come into the possession of any of those who are to forward them upon an interstate journey, intended to be such from the outset, they become a part of interstate commerce.

Conviction affirmed.