EDWARDS *v.* PACIFIC FRUIT EXPRESS CO.

No. 465.  Argued March 14, 1968.—Decided April 8, 1968.

*Arne Werchick* argued the cause for petitioner.  With him on the briefs was *David S. Levinson.*

*John J. Corrigan* argued the cause for respondent. With him on the brief was *Donald O. Roy.*

*Clifton Hildebrand* filed a brief for the Brotherhood of Railway Carmen of America et al., as *amici curiae,* urging reversal.

MR. JUSTICE BLACK delivered the opinion of the Court.

The Federal Employers' Liability Act provides that every common carrier by railroad engaged in interstate commerce shall be liable in damages for the injury or death of its employees resulting in whole or in part from the negligence of the railroad or its agents or resulting from defects in its equipment due to its negligence.[1] The question in this case is whether the respondent

---

[1] 35 Stat. 65, as amended, 45 U. S. C. § 51.

Pacific Fruit Express Company is a "common carrier by railroad."

The respondent is the largest company of its kind in the United States. It owns, maintains, and leases refrigerator cars to railroads to transport perishable products in commerce. Because it repairs its own cars, it also owns buildings, plants, switching tracks, and equipment to make these repairs. While the railroads to which its cars are leased transport them as directed, the respondent Express Company reserves the right to have the cars diverted to carry out its own business plans. The petitioner Edwards works as an iceman at one of respondent's repair and concentration plants. His duties are to transport ice and help store it in cars for carriage by the railroads. While driving a company motor vehicle in the performance of his duty as an employee for respondent, he was thrown violently to the ground, covered with burning gasoline and severely burned. He later brought this action against respondent, charging it was a "common carrier by railroad" and liable for damages under the Federal Employers' Liability Act. Contending that it was not a railroad within the meaning of the Act, respondent company moved for a summary judgment which the District Court granted. The Court of Appeals affirmed, 378 F. 2d 54, and we granted certiorari. 389 U. S. 912. We agree with both courts and affirm.

In conducting its business of providing and servicing insulated railroad cars for the carriage of perishable commodities, it is undoubtedly true that respondent performs some railroad functions. For example, it maintains and takes care of railroad cars which are leased to railroads for transportation in interstate commerce. It services these cars while in transit and controls their eventual destination. And respondent has yards and facilities for the repair and storage of its refrigerator cars. The ques-

tion is whether such functions as these are sufficient to constitute respondent a "common carrier by railroad." For the answer to this question we must look to past judicial decisions interpreting the Federal Employers' Liability Act and also the legislative history surrounding the Act.

This Court has held that the words "common carrier by railroad" mean "one who operates a railroad as a means of carrying for the public,—that is to say, a railroad company acting as a common carrier. This view not only is in accord with the ordinary acceptation of the words, but is enforced by the mention of cars, engines, track, roadbed and other property pertaining to a *going railroad* . . . ." *Wells Fargo & Co.* v. *Taylor,* 254 U. S. 175, 187–188. (Emphasis added.) This interpretation of the Act with its references to "operat[ing] a railroad" and a "going railroad" would indicate that the business of renting refrigerator cars to railroads or shippers and providing protective service in the transportation of perishable commodities is not of itself that of a "common carrier by railroad." And indeed the *Wells Fargo* decision held that express companies were not within the coverage of the Act.[2] In an even earlier case, *Robinson* v. *Baltimore & Ohio R. Co.,* 237 U. S. 84, this Court held that a Pullman car porter was not an employee of a railroad, hence, not within the coverage of the Act. These decisions are based on the rationale that there exist a number of activities and facilities which, while used in conjunction with railroads and closely related to railroading, are yet not railroading itself. In fact, this Court pointed out in the *Robinson* case, in discussing the coverage of the Federal Employers' Liability Act, that, "It was well known that there were on interstate trains

---

[2] Express companies were again excluded in the subsequent case of *Jones* v. *New York Cent. R. Co.,* 182 F. 2d 326 (C. A. 6th Cir. 1950), relying on the *Wells Fargo* decision.

persons engaged in various services for other masters. Congress, familiar with this situation, did not use any appropriate expression which could be taken to indicate a purpose to include such persons among those to whom the railroad company was to be liable under the Act." 237 U. S., at 94.

In 1939 Congress substantially amended the Federal Employers' Liability Act. Because of such decisions as *Wells Fargo, supra,* and *Robinson, supra,* one of the proposed amendments [3] would have changed the coverage language of § 1 of the Act to read as follows: "Every common carrier by railroad, including every express company, freight forwarding company, and sleeping-car company, engaged in commerce . . . ." Obviously the proposal was designed to nullify this Court's construction of the Act which had excluded employees of sleeping-car companies and express companies. In committee the proposal received little support and was even opposed by certain segments of organized labor, and it failed to pass.[4] By refusing to broaden the meaning of railroads, Congress declined to extend the coverage of the Act to activities and facilities intimately associated with the business of common carrier by railroad.

Equally significant is the fact that in the years immediately preceding the 1939 amendment to the Federal Employers' Liability Act, Congress had enacted other major labor and social transportation legislation in which refrigerator car companies were expressly included. For example, in the decade of the 1930's Congress passed the following Acts which specifically extend coverage to "any company . . . which operates any equipment or facilities or performs any service . . . in connection

---

[3] S. 1708, 76th Cong., 1st Sess. (1939).

[4] Hearings before Subcommittee of the Senate Committee on the Judiciary on Amending the Federal Employers' Liability Act, 76th Cong., 1st Sess., 57, 58 (1939).

with . . . refrigeration or icing . . . of property trans-ported by railroad . . .": (1) An amendment to the Railway Labor Act, 48 Stat. 1185 (1934), 45 U. S. C. § 151. The Act as originally passed, 44 Stat. 577 (1926), did not specifically include refrigerator car companies. Congress amended it to do so. (2) The Railroad Retire-ment Act of 1934, 48 Stat. 1283, held unconstitutional in *Railroad Retirement Board* v. *Alton R. Co.*, 295 U. S. 330 (1935). (3) The Railroad Retirement Act (1935), 49 Stat. 967, and (4) The Carriers' Taxing Act, 49 Stat. 974 (1935), both of which were passed to overcome the constitutional objection to the Act of 1934. (5) The Railroad Retirement Act of 1937, 50 Stat. 307, 45 U. S. C. § 228a *et seq.* (1937). (6) The Carriers' Taxing Act of 1937, 50 Stat. 435. (7) The Railroad Unemployment Insurance Act, 52 Stat. 1094, 45 U. S. C. § 351 *et seq.* (1938). Yet in 1939, when it came to the amendment of the Federal Employers' Liability Act, Congress made no mention of refrigerator car companies.

In light of this history it is not surprising that there are only four reported cases where suits have been filed alleging that refrigerator car companies like respondent are covered by the Federal Employers' Liability Act—all refusing to hold liability under the Act. The first was *Gaulden* v. *Southern Pacific Co.*, 174 F. 2d 1022 (C. A. 9th Cir. 1949), where suit was brought by an iceman employed by the very refrigerator car company involved here. The Court of Appeals affirmed the Dis-trict Court's opinion (78 F. Supp. 651) holding that such a refrigerator car company was not a "common carrier by railroad." In a subsequent case the Third Circuit, citing the *Gaulden* opinion, held that another refrigerator car company "which conducted a business similar in all critical aspects to that of" Pacific Fruit Express Company, was not a "common carrier by rail-road." *Hetman* v. *Fruit Growers Express Co.*, 346 F.

2d 947 (C. A. 3d Cir. 1965). There have also been two state cases involving this very respondent which denied liability. In both *Aguirre* v. *Southern Pacific Co.,* 232 Cal. App. 2d 636, 43 Cal. Rptr. 73, and *Moleton* v. *Union Pac. R. Co.,* 118 Utah 107, 219 P. 2d 1080, cert. denied, 340 U. S. 932, the courts concluded that respondent was not a "common carrier by railroad."

Thus, for 60 years the Federal Employers' Liability Act has been administered with the understanding that refrigerator car companies are not included within the terms of the Act. During that time injured employees have been taken care of under state compensation laws. In fact the petitioner here has already drawn more than $6,000 under the California compensation law. The question of whether employees shall rely on state compensation or on the Federal Employers' Liability Act is a pure question of legislative policy, concerning which apparently even the labor organizations most interested have been divided. Under these circumstances we do not think this Court should depart from 60 years of history to do what is a job for Congress.

*Affirmed.*