Edward QUITMEYER and Laura Quitmeyer, h/w

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY ("SEPTA"); Thornbury Township and Sgt. William Harwood, Individually and as Police Chief of Thornbury Township; Police Officers Kelly and Fornia; James MacElree, District Attorney of Chester County; Martha Laynas, Assistant District Attorney of Chester County and National Medical Services, Inc.

Civ. A. No. 89-0827.

United States District Court,
E.D. Pennsylvania.

June 22, 1990.

J. Michael Farrell, Philadelphia, Pa., for plaintiffs.

Mark Lipowicz, Philadelphia, Pa., for SEPTA.

Joanne E. Kleiner, Philadelphia, Pa., for Nat. Medical Services, Inc.

John S. Halsted, Philadelphia, Pa., for MacElree & Laynas.

William F. Holsten, II, Esq., Media, Pa., for Thornbury Tp., Harwood, Kelly and Fornia.

## MEMORANDUM

WALDMAN, District Judge.

Plaintiffs commenced this action on February 3, 1989 against the Southeastern Pennsylvania Transportation Authority ("SEPTA") and various other defendants pursuant to the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Presently before the court are the defendants' individual and joint motions to dismiss plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

### I. Background

The allegations of the Complaint, construed in the light most favorable to the plaintiffs, are as follows.

On February 5, 1986, plaintiff Edward Quitmeyer,[1] an employee of SEPTA, was the engineer operating a SEPTA train involved in a grade-crossing accident with an automobile. This accident resulted in the death of the driver and injuries to four other occupants of the automobile.

Following the accident, and also on February 5, defendants Kelly and Formica, officials in the Thornbury Township Police Department, administered a drug and alcohol test to Edward Quitmeyer.[2] On February 10, 1986, Kelly and Formica delivered the blood and alcohol samples to defendant National Medical Services, Inc. ("NMS") for analysis.

NMS performed an analysis on March 26, 1986. The analysis showed quantities of alcohol and marijuana in Quitmeyer's blood, although not great enough presumptively to establish intoxication. The results of this test were forwarded to the office of the Chester County District Attorney and were marked confidential.

On or about April 2, 1987, SEPTA learned the results of the above tests, although the complaint does not precisely specify how or from whom. That same day, SEPTA removed Mr. Quitmeyer from service and required him to undergo another drug and alcohol screening. The results of this test were negative. On May 18, 1987, SEPTA discharged Quitmeyer. Plaintiffs do not make clear whether SEPTA ever returned Mr. Quitmeyer to service between April 3 and May 18, 1987.

### II. Standard

In deciding a motion to dismiss for failure to state a cognizable claim under Fed. R.Civ.P. 12(b)(6), the court must accept as true all of plaintiff's factual allegations and draw from them all reasonable inferences favorable to the plaintiff. *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3rd Cir. 1984). A case should not be dismissed for failure to state a claim unless it appears certain that no relief can be granted under any set of facts that could be proved consistent with plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### III. SEPTA's Motion to Dismiss

Count I of the Complaint asserts a cause of action against SEPTA under FELA for

---

1. Plaintiff Laura Quitmeyer, the wife of Edward Quitmeyer, is suing all defendants solely for loss of consortium.

2. Officer Formica is incorrectly identified in plaintiffs' complaint as "Officer Fornia."

injuries plaintiff sustained because of the allegedly negligent design, construction and maintenance of the grade crossing where the February 5, 1986 accident occurred. SEPTA has not moved to dismiss this count.

In Count II, Edward Quitmeyer asserts claims under 42 U.S.C. §§ 1983, 1985, 1986 and 1988. Plaintiffs now concede that they fail to state a cause of action against any defendant under §§ 1985, 1986 and 1988. Accordingly, these claims will be dismissed as to all defendants.

■■■■ While unspecified in the Complaint, in their response to the defendants' motion to dismiss plaintiffs assert that the § 1983 cause of action is premised on SEPTA's alleged violation of Mr. Quitmeyer's Fourth Amendment rights when it tested him for drugs and alcohol on April 2, 1987.

To state a claim under 42 U.S.C. § 1983, the conduct complained of must have been committed by a person acting under color of state law, and must have deprived the plaintiff of some right secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). SEPTA concedes that, as a government agency, it acts under color of state law, but contends that the drug and alcohol test administered to Mr. Quitmeyer did not constitute an unconstitutional search or seizure.

The Fourth Amendment guarantees the right to be free from "unreasonable" search and seizure. Government drug testing constitutes a search for purposes of the Fourth Amendment. *Transport Workers' Local 234 v. SEPTA*, 863 F.2d 1110, 1115 (3rd Cir.1988). Whether such testing is unreasonable can only be determined on a case-by-case basis, and will depend on whether "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring). *See also O'Connor v. Ortega*, 480 U.S. 709, 725, 107 S.Ct. 1492, 1502, 94 L.Ed.2d 714 (1987) (plurality opinion). Further, the general requirement of individualized suspicion has been somewhat relaxed in the drug testing context where strong public safety considerations are at issue and where delay in testing could result in the disappearance of evidence. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (upholding Federal Railroad Administration regulations requiring immediate drug testing of covered employees following train accidents); *Transport Workers' Local 234 v. SEPTA, supra* (upholding defendant's random drug and alcohol testing policy).

For SEPTA to test an engineer for drug use within 24 hours of learning that he had consumed alcohol and marijuana prior to a fatal accident is on its face quite reasonable. Where the engineer is removed from service, apparently with no intent to reinstate him, however, the public safety considerations that normally would make such a test reasonable are absent. There is no indication that the test on April 2, 1987 was conducted pursuant to a random testing policy or that the defendant agency had sufficient facts to support any individualized suspicion that the plaintiff was operating equipment on April 2 under the influence of drugs or alcohol.

Although the plaintiff was discharged six weeks after testing negatively, the drug test of April 2, 1987 reasonably could have been part of an overall process for determining whether plaintiff's employment should be continued. There is nothing in the complaint, however, from which the court can conclude that this was in fact the case here. Thus, it is a question addressed more appropriately in a motion for summary judgment than a motion to dismiss.

■■ The complaint in the instant case, however, does not specify the nature of the alleged § 1983 violation and is insufficient to satisfy the heightened pleading requirements for civil rights claims. *See Frazier v. SEPTA*, 785 F.2d 65, 69 (3d Cir.1986); *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922–23 (3d Cir.1976). Moreover, insofar as the allegations of Count II are based on a theory of *respondeat superior*, they are impermissible. *See Andrews v. Phila-*

*delphia,* 895 F.2d 1469, 1480 (3d Cir.1990). Plaintiffs conceivably can maintain an action for deprivation of Mr. Quitmeyer's Fourth Amendment rights if they can allege in good faith that the actions of SEPTA were taken pursuant to a particular policy of that agency. *See Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 692–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978).

Accordingly, Count II of plaintiffs' Complaint will be dismissed without prejudice to file an amended § 1983 claim if a valid one can be asserted consistent with the requirements of Fed.R.Civ.P. 11.

Count III of the Complaint alleges a cause of action against SEPTA for wrongful discharge "in violation of federal and state public policy." SEPTA contends that because plaintiff was a union member and contract employee, he cannot maintain an action for wrongful discharge. If SEPTA's factual assertion is correct, then so is its legal conclusion. *See Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953, 958 (E.D.Pa.1987). However likely it might be that all SEPTA engineers are union members and employed under the terms of a negotiated labor-management contract, plaintiff's employment status does not appear in the complaint. Accordingly, it is appropriate to note that even if he was a non-contract employee, plaintiff has failed to state a cognizable wrongful discharge claim.

Under Pennsylvania law, an at-will employee may have an action for wrongful discharge against his employer only if the discharge violates a significant public policy or there is a specific intent to harm the employee. *See Geary v. United States Steel Corp.,* 456 Pa. 171, 178–85, 319 A.2d 174 (1974); *Darlington v. Gener-*

*al Electric,* 350 Pa.Super. 183, 208, 504 A.2d 306 (1986). This is an exception to the general right of employers to terminate at-will employees for any reason at any time, and is to be narrowly construed. *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 918 (3d Cir.1982); *Durham v. Fleming Companies, Inc.,* 727 F.Supp. 179, 182–83 (E.D.Pa.1989), *aff'd,* 897 F.2d 521 (3d Cir.1990); *Paul v. Lankenau Hospital,* 375 Pa.Super. 1, 17, 543 A.2d 1148 (1988). The public policy in question must be "clearly mandated" and of a type that "strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894, 899 (3d Cir.1983). The interests the employer seeks to advance and the interests of society in protecting the employer's freedom of action in such cases are important factors to be considered. *Id.* at 901.

In the instant case, the Complaint does not specify what public policy allegedly has been implicated. As such, the claim is insufficiently pled as a matter of law. *Armbruster v. Philadelphia Port Corp.,* 1988 WL 95092, 1988 U.S. Dist. LEXIS 10106 (E.D.Pa.1988).[3]

In their brief, plaintiffs formulate the purported "policy" in question as follows: "[I]f railroad workers' fourth amendment rights are to be relaxed permitting drug screening at the time of accidents, then discharges based on blood screenings must be timely and relevant to said screening." Plaintiffs appear to acknowledge that neither drug testing of engineers after train accidents nor discharging those who test positively violates public policy. That plaintiff was not terminated promptly after the accident or initial drug test may be cause for public concern, but does not render his later discharge violative of a significant public policy.[4] Indeed, the discharge

---

**3.** The complaint does not allege and plaintiffs do not contend that SEPTA terminated Mr. Quitmeyer with specific intent to injure him. The harm normally occasioned by the act of discharging an employee does not establish a specific intent to harm. *Tourville v. Inter-Ocean Insurance Co.,* 353 Pa.Super. 53, 56 n. 5, 508 A.2d 1263 (1986), *appeal denied,* 513 Pa. 642 (1987), *rereported and corrected,* 514 Pa. 619, 521 A.2d 933 (1987). Rather, to qualify under

this exception the discharge must be malevolent and for no reason other than "an atavistic desire to hurt another." *Id.* 353 Pa.Super. at 57, 508 A.2d 1263.

**4.** Plaintiffs do not and reasonably could not contend that Mr. Quitmeyer was discharged because of the results of the April 2, 1987 test which were negative.

of an engineer found by his employer to bear some responsibility for a fatal accident without any implication of drug use would not violate a significant, clearly mandated public policy.

Accordingly, Count III will be dismissed.

■ Counts IV and V of the Complaint, respectively, allege state causes of action against SEPTA for intentional and negligent infliction of emotional distress. Pennsylvania courts have examined claims for intentional infliction of emotional distress under § 46(1) of the *Restatement (Second) of Torts*, which states:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.[5]

*See Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 190, 527 A.2d 988 (1987); *D'Ambrosio v. Pennsylvania Nat. Mut. Casualty Ins. Co.*, 494 Pa. 501, 511 n. 8, 431 A.2d 966 (1981).

The administration of a drug and alcohol test and the discharge of an engineer in connection with a fatal train accident clearly does not constitute conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Restatement* § 46, comment d. Only in "extremely rare" instances will conduct in the employment context be sufficiently outrageous to sustain a claim for intentional infliction of emotional distress. *Clark v. Township of Falls*, 890 F.2d 611, 623 (3d Cir.1989) (publicizing disparaging

information insufficient). *See also Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988) (discharging employee on first day back to work following triple bypass surgery not sufficiently outrageous); *Madreperla v. Williard Co.*, 606 F.Supp. 874, 880 (E.D.Pa.1985) (premeditated plan to harass employee into resigning not sufficiently outrageous); *Cautilli v. GAF Corp.*, 531 F.Supp. 71, 74 (E.D.Pa.1982) (tricking employee into foregoing other employment not sufficiently outrageous).[6]

■ With an extremely narrow exception involving certain third-party bystanders, Pennsylvania law does not impose liability for negligent infliction of emotional distress without physical impact. *See Kazatsky, supra*, 515 Pa. at 192–94, 527 A.2d 988; *Niederman v. Brodsky*, 436 Pa. 401, 413, 261 A.2d 84 (1970).

Accordingly, SEPTA's motion to dismiss Counts IV and V will be granted.

## IV. Thornbury Township, Sergeant Harwood, Officers Kelly and Formica's Joint Motion to Dismiss

■ Count VI of the Complaint asserts that officers of the Thornbury Township Police Department violated Mr. Quitmeyer's constitutional rights by arresting him without probable cause and seizing blood and alcohol samples from him on February 5, 1986.

Plaintiffs' § 1983 cause of action against these defendants is clearly barred by the applicable two-year statute of limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985) and 42 Pa.Cons.Stat. Ann. § 5524.[7] Under Pennsylvania law, a

---

**5.** Some doubt was created about whether Pennsylvania recognizes the tort of intentional infliction of emotional distress in *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987). The Superior Court has since reached conflicting results. *See Salerno v. Philadelphia Newspapers*, 377 Pa.Super. 83, 546 A.2d 1168 (1988) and *Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137 (1988). Since *Kazatsky*, the Third Circuit has reaffirmed its prediction that the state Supreme Court would recognize this tort. *Williams v. Guzzardi*, 875 F.2d 46 (3d Cir.1989). Therefore, the court assumes that recovery for intentional infliction of emotional distress is possible in Pennsylvania.

**6.** It is also doubtful that plaintiff's claims of anxiety, depression, headaches or "adulteration" of mood are sufficient to satisfy the severity requirement of the *Restatement*. *See Montgomery v. Green*, 1989 WL 121868, 1989 U.S. Dist. LEXIS 12232 (E.D.Pa.1989).

**7.** A complaint which is barred on its face by an affirmative defense, such as the statute of limitations, may be dismissed pursuant to Fed.R. Civ.P. 12(b)(6). *Green v. Maraio*, 722 F.2d 1013, 1018–19 (2d Cir.1983); *Kaiser Aluminum v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

cause of action in negligence accrues as soon as a plaintiff knows or should know of an objective and ascertainable injury. *Rabelo v. Board of Trustees of Temple University*, 1988 WL 76127, 1988 U.S. Dist. LEXIS 7386 (E.D.Pa.1988) (*citing Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468 (1983)); *Redeker v. Johns–Manville Products Corp.*, 571 F.Supp. 1160, 1168 (W.D. Pa.1983); *Lipitz v. Washington National Insurance Co.*, 513 F.Supp. 606, 607 (E.D. Pa.1981). Plaintiffs allege that the unconstitutional arrest and seizure took place on February 5, 1986. Plaintiffs did not file their Complaint until February 3, 1989, almost three years after they knew of this alleged injury.

Plaintiffs contend that their claim is in fact timely since Mr. Quitmeyer was discharged from SEPTA less than two years prior to filing the complaint. Plaintiffs do not allege that the Thornbury defendants were responsible for disclosing the February 5, 1986 test results to SEPTA. The basis for relief asserted against the Thornbury defendants is the harm allegedly caused to Mr. Quitmeyer on February 5, 1986, not May 18, 1987.

Accordingly, plaintiffs' cause of action against the Thornbury defendants will be dismissed.

### V. James MacElree and Martha Laynas' Joint Motion to Dismiss

■ Count VII sets forth a § 1983 cause of action against the District Attorney of Chester County and an Assistant District Attorney for the alleged disclosure of the February 5, 1986 test results to SEPTA.[8] Counts VIII and IX, respectively, assert causes of action against these defendants for intentional and negligent infliction of emotional distress. For the reasons set forth in Section III, *supra*, relating to the dismissal of Counts IV and V, Counts VIII and IX will be dismissed.

■ Count VII will also be dismissed for failure to plead a civil rights cause of action with requisite specificity. *See Frazier v. SEPTA, supra*, at 69; *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir.1978). The complaint avers that "On or about April 2, 1987, the results of the unlawful drug and alcohol screenings of the Plaintiff Edward Quitmeyer taken in violation of his constitutional rights on or about February 5, 1986 were disclosed to the defendant SEPTA in violation of Plaintiff's rights," and refers to "unlawful and malicious acts" by defendants MacElree and Laynas presumably in connection therewith. It is unclear, however, specifically what role, if any, these defendants played individually in the alleged disclosure. It is unclear whether these defendants even were responsible for disclosure of the test results to SEPTA, especially since Count X of the Complaint alleges that NMS was responsible. Finally, to the extent that Mr. Quitmeyer's claim against defendant MacElree is premised on a theory of *respondeat superior*, it cannot be sustained. *See Monell v. New York City Department of Social Services, supra*, 436 U.S. at 692–95, 98 S.Ct. at 2036–38.

■ Accordingly, plaintiffs' claims against defendants MacElree and Laynas will be dismissed. Plaintiffs may amend Count VII of their Complaint to assert a valid § 1983 cause of action under the Fourteenth Amendment if such can be done consistent with the requirements of Fed.R. Civ.P. 11.[9]

### VI. National Medical Services, Inc.'s Motion to Dismiss

Count X of the Complaint asserts a state cause of action for negligence against NMS

---

8. Count VII also asserts a state law cause of action against MacElree and Laynas for negligence. However, because federal jurisdiction over these defendants is lacking, the court declines to accept jurisdiction over this pendent claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1968); *Gingras v. General Electric Co.*, 476 F.Supp. 644, 647 (E.D.Pa.1979).

9. To the extent that Count VII is premised on a right to privacy contention that the State may not publicize a record of an official act, namely, the result of a drug test taken in connection with a criminal investigation, it cannot be sustained. *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

for the allegedly negligent performance, analysis and disclosure of the results of Mr. Quitmeyer's February 5, 1986 drug and alcohol test to SEPTA. NMS has moved to dismiss based on the statute of limitations.

 The court will not address the merits of NMS' motion since, as a threshold matter, subject matter jurisdiction for plaintiffs' claim against NMS is lacking. Federal courts, as courts of limited jurisdiction, may not ordinarily consider claims against pendant parties over whom they have no independent basis of federal jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420–21, 49 L.Ed.2d 276 (1976); *Tully v. Motts Supermarkets, Inc.,* 540 F.2d 187, 196 (3d Cir.1976); *Gingras v. General Elec. Co., supra,* at 647. *Accord, Finley v. United States,* — U.S. —, 109 S.Ct. 2003, 2010, 104 L.Ed.2d 593 (1989) (grant of federal jurisdiction over particular claims and parties does not confer jurisdiction over additional claims against different parties). Because plaintiffs assert no federal cause of action against NMS, and because NMS is a non-diverse party, they may not pursue a state cause of action against NMS in this forum under a "pendent party" rationale.[10]

Accordingly, Count X will be dismissed without prejudice for lack of subject matter jurisdiction, and therefore NMS' motion to dismiss Count X of the Complaint based on the statute of limitations will be denied as moot.

## VII. Plaintiff Laura Quitmeyer's Consortium Claim

 Count XI sets forth a cause of action by Laura Quitmeyer for loss of consortium. Under Pennsylvania law, a wife's consortium claim derives only from the injured husband's right to recover in tort. *Little v. Jarvis,* 219 Pa.Super. 156, 162, 280 A.2d 617 (1971). Thus, where the allegedly injured spouse fails to plead a cognizable claim, his spouse's claim for loss of consortium cannot survive.

 Moreover, there is no authority to permit spousal recovery for loss of consortium based on violations of the other spouse's civil rights. *Dunshee v. McGurk,* 1987 WL 18418, 1987 U.S. Dist. LEXIS 9209 (E.D.Pa.1987); *Hopkins v. Kates,* No. 85–2444, slip op. (E.D.Pa. July 9, 1985); *Touchstone v. Upper Gwynedd Township,* No. 78–2112, slip op. at 2, 4 (E.D.Pa. July 29, 1980), *aff'd,* 691 F.2d 491 (3d Cir.1982). Similarly, there is no recovery for loss of consortium in an FELA action. *Kelsaw v. Union Pacific R. Co.,* 686 F.2d 819, 820 (9th Cir.1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983); *Perry v. Metro–North Commuter R.R.,* 716 F.Supp. 61, 64 (D.Conn.1989); *Greethurst v. Bethlehem Steel Corp.,* 380 F.Supp. 638, 639 (N.D.Ind.1974); *Rodzik v. New York Central Railroad Co.,* 169 F.Supp. 803, 806 (E.D.Mich.1959).

Accordingly, Count XI of the Complaint will be dismissed.

Appropriate Orders follow.

## ORDER

AND NOW, this 22nd day of June, 1990, upon consideration of defendant Southeastern Pennsylvania Transportation Authority's ("SEPTA") Motion to Dismiss the Complaint, and plaintiffs' response thereto, IT IS HEREBY ORDERED that the motion is GRANTED and that Counts II, III, IV and V of the Complaint are DISMISSED.

IT IS FURTHER ORDERED that plaintiffs shall have twenty (20) days from the date of this Order in which to amend Count II to state a valid § 1983 cause of action against defendant SEPTA for violation of plaintiff Edward Quitmeyer's Fourth Amendment rights.

## ORDER

AND NOW, this 22nd day of June, 1990, upon consideration of defendant Southeastern Pennsylvania Transportation Authority's ("SEPTA") Motion to Dismiss Count XI of the Complaint pursuant to Fed.R.

---

**10.** The court notes that plaintiffs were free to consolidate their claims against all the defendants in one action. Pennsylvania courts accept jurisdiction over § 1983 suits as a matter of course. *See, e.g., Fawber v. Cohen,* 516 Pa. 352, 532 A.2d 429 (1987); *Balshy v. Rank,* 507 Pa. 384, 490 A.2d 415 (1985).

Civ.P. 12(b)(6), and plaintiffs' response thereto, and consistent with section VII of the accompanying Memorandum, IT IS HEREBY ORDERED that said motion is GRANTED and that Count XI of the Complaint is DISMISSED.

## ORDER

AND NOW, this 22nd day of June, 1990, upon consideration of defendants Thornbury Township, Sgt. William Harwood, Officer Kelly and Officer Formica's joint motion to dismiss the Complaint, and plaintiffs' response thereto, IT IS HEREBY ORDERED that the motion is GRANTED and that Count VI of the Complaint is DISMISSED.

## ORDER

AND NOW, this 22nd day of June, 1990, upon consideration of defendants James MacElree and Martha Laynas' joint motion to dismiss the Complaint, IT IS HEREBY ORDERED that the motion is GRANTED and that Counts VII, VIII and IX of the Complaint are DISMISSED.

IT IS FURTHER ORDERED that plaintiffs shall have twenty (20) days from the date of this Order in which to amend Count VII of the Complaint to state a valid § 1983 cause of action.

## ORDER

AND NOW, this 22nd day of June, 1990, upon consideration of defendant National Medical Services, Inc's motion to dismiss Count X of the Complaint pursuant to Fed. R.Civ.P. 12(b)(6), IT IS HEREBY ORDERED that the motion is DENIED as MOOT.

IT IS FURTHER ORDERED that Count X of the Complaint is DISMISSED without prejudice for lack of subject matter jurisdiction.